## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KASHEYON LEE-CHIMA,** | **:** | |
| **Plaintiff** | **:** | **CIV. ACTION NO. 3:22-CV-1801** |
| **v.** | **:** | **(JUDGE MANNION)** |
| **E.C. CAROLAN, _et al._,** | **:** | |
| **Defendants** | **:** | |

### MEMORANDUM

Presently before the court in this prisoner civil rights case is defendants' motion to dismiss plaintiff's amended complaint. For the reasons set forth below, the motion will be granted in part and denied in part, and plaintiff will be granted leave to file a second amended complaint.

### I.   BACKGROUND

Plaintiff, Kasheyon Lee-Chima, who has been incarcerated in Benner Township State Correctional Institution ("SCI-Benner Township") at all relevant times, brings the instant case pursuant to 428 U.S.C. §1983, alleging civil rights violations arising out of an incident in which defendant E.C. Carolan purportedly assaulted him. Lee-Chima filed his original complaint on November 5, 2022, and the court received and docketed the complaint on November 10, 2022. (Doc. 1). Defendants moved to dismiss

the original complaint on January 30, 2023, and in response Lee-Chima moved for leave to file an amended complaint. (Docs. 17, 22). The court granted the motion for leave to amend and docketed the amended complaint on June 22, 2023. (Docs. 23-24).

According to the allegations in the amended complaint, Lee-Chima was transferred to SCI-Benner Township on January 21, 2021. (Doc. 24 ¶ 4). SCI-Benner Township and all other prisons operated by the Pennsylvania Department of Corrections ("DOC") were operating under revised procedures for inmate recreation at the time due to the COVID-19 pandemic, which required inmates to have different recreation schedules depending on their assigned zone and cohort in the prison. (*Id.* ¶ 2). Because Lee-Chima never received any written notice of his zone or cohort or what his recreation schedule would be, he frequently asked SCI-Benner Township officials for such information. (*Id.* ¶¶ 5-6).

On February 16, 2021, Lee-Chima was transferred from one cell to another in the prison. (*Id.* ¶ 7). Because his cell move placed him in a different zone and cohort, he frequently asked prison staff what his revised recreation schedule would be. (*Id.* ¶¶ 8-9). The complaint alleges that defendant Carolan, a correctional officer in Lee-Chima's housing unit, initially

made "a verbal agreement" with Lee-Chima that he would inform Lee-Chima of any pertinent details of the recreation schedule. (*Id.* ¶ 10).

On February 20, 2021 at approximately 9:00 a.m., defendant Carolan electronically opened the cell doors for Lee-Chima and all other inmates in his cohort. (*Id.* ¶ 11). Lee-Chima was permitted to exit his cell and go to the unit's dayroom. (*Id.* ¶ 12). Lee-Chima went to the dayroom, made a cup of coffee, and went to the dayroom sink to add water. (*Id.* ¶ 14). He then walked towards the "kiosk machines," where he began a conversation with his cellmate and other nearby inmates. (*Id.* ¶ 15). Among other topics, the inmates purportedly discussed "the confusion and lack of communication revolving around [the] recreation schedule." (*Id.* ¶ 16).

Defendant Carolan allegedly overheard the inmates' conversation from his nearby desk. (*Id.* ¶ 17). Carolan purportedly "interrupted their conversation in a hot tempered and extreme[ly] hostile manner" and "interjected himself by making extremely inappropriate comments using offensive and derogatory language and conducting himself in an unprofessional manner." (*Id.* ¶¶ 18-19). Carolan allegedly "retaliate[d]" against the inmates for the content of their conversation by "revok[ing]" their recreation time "mere minutes" after it had started. (*Id.* ¶¶ 21-22). Lee-Chima allegedly felt that Carolan's order was "unjust" but nonetheless obeyed and

3

began to walk back to his cell. (*Id.* ¶¶ 24-25). While doing so, Lee-Chima asked if he could speak with Carolan's supervisor and asked for a grievance form. (*Id.* ¶ 26).

Following Lee-Chima's request, defendant Carolan purportedly got out of his chair and "charged" across the dayroom towards Lee-Chima. (*Id.* ¶ 31). Carolan then purportedly shoved Lee-Chima in the back, causing him to stumble forward. (*Id.* ¶ 33). As Lee-Chima was stumbling, Carolan allegedly "jerk[ed], shov[ed], and aggressive[ly] manhandle[d] Lee-Chima." (*Id.* ¶¶ 34-35). The force used by Carolan caused him to drop his coffee cup, which led to minor burns. (*Id.* ¶¶ 36-37). Carolan then grabbed Lee-Chima's left wrist and twisted his arm upwards before placing him in handcuffs. (*Id.* ¶ 38). After Lee-Chima was in handcuffs, Carolan purportedly continued to twist his wrist, hand, and harm. (*Id.*) Lee-Chima repeatedly asked Carolan to stop, but he did not do so. (*Id.* ¶ 39). Lee-Chima then asked why Carolan was using force against him and he responded with unspecified "racial and anti-homosexual hate speech." (*Id.* ¶ 40).

Realizing that Carolan was not going to stop assaulting him, Lee-Chima purportedly began to call for help. (*Id.* ¶ 41). Defendants Carmac and John Doe 1, who were officers working in the unit, purportedly responded to the scene. (*Id.* ¶ 43). Both officers allegedly observed Carolan assaulting

Lee-Chima but did not intervene to stop him. (*Id.* ¶ 44). After Carolan stopped using force, one of the three officers escorted Lee-Chima to the unit counselor's office, where he was told to wait for additional officers to arrive. (*Id.* ¶ 46). The additional officers arrived and escorted Lee-Chima to the medical department. (*Id.* ¶ 49). A registered nurse examined Lee-Chima, observed that he had several injuries from the use of force, and prescribed him pain medication. (*Id.* ¶¶ 50-51).

At the conclusion of Lee-Chima's medical treatment, the officers took him to the prison's restricted housing unit ("RHU"). (*Id.* ¶ 52). Several hours later, Lee-Chima received notice that Carolan had filed misconduct charges against him. (*Id.* ¶¶ 54-55). The misconduct citation charged Lee-Chima with refusing to obey an order, threatening a prison employee with bodily harm, and using abusive, obscene, or inappropriate language to or about an employee. (*Id.* ¶ 57).

On February 23, 2021, Lee-Chima was given a misconduct hearing on the charges. (*Id.* ¶ 58). Defendant Schneck, a hearing officer in the prison, presided over the hearing. (*Id.*) Schneck allowed Lee-Chima to present his version of events, but allegedly prohibited him from presenting any other evidence or calling witnesses. (*Id.* ¶¶ 59-60). The complaint alleges that Schneck failed to act as an impartial hearing examiner because he reached

a biased decision in favor of Carolan's account of the incident. (*Id.* ¶ 62). Schneck found Lee-Chima guilty of the misconduct charges and sentenced him to thirty days in the RHU and loss of his prison job. (*Id.* ¶ 63). The complaint additionally alleges that as a result of the misconduct sentence, Lee-Chima "lost good time, misconduct-free status, and therefore could not be granted parole." (*Id.* ¶ 64).

Lee-Chima appealed the misconduct ruling to the prison's program review committee ("PRC"). (*Id.* ¶ 65). The PRC, comprised of defendants Booher, Klinefelter, Rossman, Grice, Sarra, and Williamson, dismissed the appeal for Lee-Chima's purported failure to keep the appeal documents "brief." (*Id.* ¶¶ 67-69). The complaint alleges that defendants violated DOC policy and Lee-Chima's right to due process by failing to consider the appeal on its merits and by failing to report Carolan's physical abuse. (*Id.* ¶¶ 71-75).

Lee-Chima appealed the PRC's ruling to the facility manager on March 3, 2021. (*Id.* ¶ 76). Because SCI-Benner Township was in the process of transitioning from one superintendent to another, Lee-Chima received a response from two facility managers, defendants Marsh and Houser. (*Id.* ¶ 77). Defendants' response purportedly acknowledged that Schneck had provided "an unfair and biased hearing," but Marsh and Houser nonetheless denied Lee-Chima's appeal. (*Id.* ¶¶ 79-80). The complaint alleges that Marsh

and Houser are liable for the alleged violation of his right to due process under a supervisory liability theory. (*Id.* ¶ 81).

On March 6, 2021, Lee-Chima submitted an appeal to the DOC's chief hearing examiner, defendant Moslak. (*Id.* ¶¶ 82-86). Moslak upheld the misconduct citation, which the complaint alleges amounts to a due process violation because it upheld the original purported due process violations. (*Id.* ¶¶ 87-90).

On March 5, 2021, Lee-Chima filed a separate grievance complaining of the alleged due process violations by defendant Schneck. (*Id.* ¶¶ 94-98). Defendant Burd, the facility grievance coordinator, dismissed the grievance on March 5, 2021, because it had been improperly filed pursuant to DC-ADM 804 rather than DC-ADM 801. (*Id.* ¶ 99). Lee-Chima appealed to the facility manager. (*Id.* ¶¶ 101-03). Defendant Houser denied the appeal on March 23, 2021. (*Id.* ¶¶ 104-08). Lee-Chima appealed to the DOC's Secretary Office of Inmate Grievances and Appeals ("SOIGA") on March 25, 2021. (*Id.* ¶ 109). Defendants Moore and Varner, acting as officials of SOIGA, denied the appeal, upholding the finding that the original grievance needed to be filed pursuant to DC-ADM 801 rather than DC-ADM 804. (*Id.* ¶¶ 110-11).

The complaint asserts that Lee-Chima filed a third grievance, relating to the underlying use of force by defendant Carolan, on March 10, 2021. (*Id.*

7

¶¶ 113-14). Defendant Barner denied the grievance on May 20, 2021, finding that Lee-Chima's allegations were "unfounded." (*Id.* ¶ 115). Barner's denial of the grievance purportedly did not contain enough detail or explanation to comply with DOC grievance policy. (*Id.* ¶¶ 116-17). Lee-Chima appealed to the facility manager on June 1, 2021. (*Id.* ¶ 118). Defendant Houser purportedly acknowledged that defendant Barner's response violated DOC policy, but Houser nonetheless denied the appeal on June 25, 2021. (*Id.* ¶¶ 120-22). Lee-Chima appealed Houser's denial of his appeal to SOIGA on June 28, 2021. (*Id.* ¶ 124). Defendants Varner and Moore denied the appeal on September 2, 2021. (*Id.* ¶¶ 126-27).

Lee-Chima also purportedly sought to press criminal charges against defendant Carolan for the underlying use of force. (*Id.* ¶ 130). Defendants Barnacle and Verbyla, who were acting as investigatory officials in the prison, purportedly denied this request. (*Id.*) As a result, Lee-Chima contacted the Pennsylvania State Police. (*Id.* ¶ 133). John Doe 2, an officer with the state police who officials with the prison purportedly knew as "trooper Ingramham," came to the prison to interview Lee-Chima about his allegations. (*Id.* ¶¶ 134-36). John Doe 2 was purportedly "very dismissive" of Lee-Chima's concerns, purportedly telling Lee-Chima, "[Y]ou are a[n] inmate in prison, you are to be mistreated and abused. [O]fficers have the right to beat the fucking shit out

of you[.] [D]on[']t come to prison if you don[']t want your rights violated." (*Id.* ¶ 139). John Doe 2 purportedly refused to write a police complaint on Lee-Chima's behalf. (*Id.* ¶¶ 140-41).

Immediately after his interaction with John Doe 2, Lee-Chima wrote to the state police again to complain about John Doe 2's conduct during the interview. (*Id.* ¶ 142). Lee-Chima received several responses to his written communications from defendant Bonin, a criminal investigation section supervisor at the state police. (*Id.* ¶ 143). Bonin refused to address John Doe 2's allegedly unprofessional conduct and refused to file criminal charges against Carolan.

The amended complaint additionally asserts supervisory liability claims against defendants Wetzel and Little, who both served as secretaries of the DOC during the relevant period. (*Id.* ¶ 147). The amended complaint alleges that Wetzel and Little knew or should have known of defendant Carolan's "extensive history of misuse of force" and taken steps to protect Lee-Chima. (*Id.* ¶ 148).

The court liberally construes the amended complaint as asserting claims for cruel and unusual punishment, unconstitutional conditions of confinement, and denial of medical care in violation of the Eighth Amendment; violation of Lee-Chima's Fourteenth Amendment rights to due

process and equal protection; and retaliation in violation of the First Amendment. (*See* Doc. 24 at 4, 16). The named Defendants moved to dismiss the amended complaint on July 27, 2023. (Doc. 25). Briefing on the motion is complete and it is ripe for review. (Docs. 33, 40, 44, 48).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief may be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim, Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not

enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

In resolving a motion to dismiss, the court thus conducts "a two-part analysis." *Fowler*, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregards the legal conclusions. *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 211 (quotations omitted).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III.   DISCUSSION

### A.   Motion to Dismiss

Defendants advance four arguments for dismissal: (1) that Lee-Chima failed to exhaust his due process claims against defendant Schneck;[1] (2) that Lee-Chima fails to allege the personal involvement of several

---

[1] The court does not construe the motion to dismiss as asserting that Lee-Chima failed to exhaust any other claims.

defendants; (3) that Lee-Chima's claims fail to state a claim upon which relief may be granted; and (4) that Lee-Chima's official capacity claims fail as a matter of law. (Doc. 33). The court will first analyze the merits of Lee-Chima's claims against the defendants who participated in, or directly witnessed, the underlying assault: defendants Carolan, Carmac, and John Doe 1, before shifting focus to the claims against all other defendants.

### 1.    Claims Against Carolan, Carmac, and John Doe 1

The court begins its analysis with the claims against defendants Carolan, Carmac, and John Doe 1. Lee-Chima alleges that Carolan committed excessive force in violation of the Eighth Amendment. To state an excessive force claim, a plaintiff must allege that a defendant used force "maliciously and sadistically for the very purpose of causing harm." *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193 (3d Cir. 2021) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Several factors should be considered in determining whether force was applied maliciously and sadistically, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response.

12

*Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)).

The court finds that the amended complaint states an excessive force claim upon which relief may be granted against Carolan. The amended complaint alleges that as Lee-Chima was walking away, Carolan charged at him, shoved him in the back, jerked and shoved him around, and then grabbed and twisted his arm, wrist, and hand before placing him in handcuffs. (Doc. 24 ¶¶ 31-40). Although defendants assert that this use of force was *de minimis*, (Doc. 33 at 26-27), based on the facts alleged in the complaint—which must be accepted as true at this stage of litigation—it is not clear that Carolan was justified in using *any* force against Lee-Chima. The amended complaint alleges that Lee-Chima was walking away from Carolan, had not taken any physically aggressive actions against Carolan or any other individuals, and had not done anything to provoke Carolan's actions other than talking with other inmates. Given these alleged facts and the alleged use of force by Carolan, the court finds that the amended complaint adequately alleges that Carolan used force "maliciously and sadistically for the very purpose of causing harm." *Jacobs*, 8 F.4th at 193. The court will accordingly deny defendants' motion to dismiss the excessive force claim.

13

The court will likewise deny the motion to dismiss the claims against defendants Carmac and John Doe 1. "[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under §1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith*, 293 F.3d at 650. Here, the amended complaint alleges that Carmac and John Doe 1 observed Carolan assaulting Lee-Chima and failed to take any action to stop the assault. This is sufficient to state a failure to intervene claim upon which relief may be granted.

The court additionally liberally construes the amended complaint as asserting a retaliation claim against defendant Carolan. (*See* Doc. 24 ¶¶ 21-22). To state a retaliation claim, a plaintiff must allege: (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the protected conduct and the retaliatory action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Here, Lee-Chima's retaliation claim is based on the theory that he engaged in protected conduct when he spoke with the other inmates in the dayroom and that Carolan retaliated against

him for that protected conduct by (1) revoking the inmates' recreation time, (2) assaulting him, and (3) initiating misconduct charges against him.

Defendants argue that the amended complaint fails to state a retaliation claim because it fails to allege that Lee-Chima engaged in constitutionally protected conduct and fails to allege that Carolan took any sufficiently adverse action against him to support a retaliation claim. (Doc. 33 at 23).

The court, at this stage, disagrees. Although the amended complaint includes sparse details as to what Lee-Chima and the other inmates said during their conversation in the dayroom prior to the alleged assault by Carolan, the amended complaint alleges that they were discussing "the confusion and lack of communication revolving around [the] recreation schedule," and that Lee-Chima "sought some knowledge and understanding from his peers" due to "staff inability to properly inform [him] of the recreation schedule." (Doc. 24 ¶ 24). In light of the amended complaint's allegation that Lee-Chima and Carolan purportedly had "a verbal agreement" that Carolan would inform Lee-Chima of any pertinent details of the recreation schedule, (*see id.* ¶ 10), the court liberally construes the allegations regarding the conversation between Lee-Chima and the other cellmates as alleging that Lee-Chima was making an informal complaint that Carolan was not doing his

job properly. The Third Circuit has held that such informal oral complaints regarding the conditions of a prisoner's confinement may constitute protected conduct that can give rise to a retaliation claim. *See Mack v. Warden Loretto FCI*, 839 F.3d 266, 297-99 (3d Cir. 2016).

As for Defendants' argument that Lee-Chima fails to allege a sufficiently adverse action to support a retaliation claim, defendants identify the revocation of recreation time and the initiation of misconduct charges against Lee-Chima as the possible bases for the retaliation claim and assert that neither is sufficient to state a retaliation claim.

Defendants are correct that the revocation of recreation time and the initiation of the misconduct charges would not be sufficient to state a retaliation claim. The revocation of recreation time was a *de minimis* action that would not deter a person of ordinary firmness from exercising his constitutional rights. *See, e.g.*, *Burgos v. Canino*, 358 F. App'x 302, 307 (3d Cir. 2009) (holding that denial of one-hour recreation period was not a sufficiently adverse action to support a retaliation claim). And the initiation of misconduct charges is not sufficient to support a retaliation claim because Lee-Chima was ultimately found guilty of the misconduct charges. *See, e.g.*, *Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010) (noting that claim that misconduct charges were filed in retaliatory manner fails when there is "some

evidence" supporting a finding that the inmate was guilty of the charges). Defendants' argument, however, overlooks the alleged assault by Carolan. Assuming the truth of Lee-Chima's allegations, as the court must do at this stage of the litigation, the court finds that the alleged assault by Carolan was a sufficiently adverse action to deter a person of ordinary firmness from exercising his constitutional rights. Accordingly, the court will allow the retaliation claim to proceed.

### 2.  Due Process Claim Against Schneck

Lee-Chima's claim against Schneck allege that Schneck violated his right to procedural due process in various ways during his disciplinary hearing arising from the incident with Carolan. This claim fails as a matter of law. Prison disciplinary proceedings only trigger procedural due process protections when the sanction imposed on the prisoner plaintiff constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Here, the sanctions imposed on Lee-Chima—thirty days in the RHU and loss of his prison job—do not constitute atypical and significant hardship that would trigger procedural due process protections. *See id*. at 485-86 (holding that sanction of thirty days in disciplinary confinement did not constitute atypical and significant hardship); *Iwanicki v. Pa. De't of Corrs.*, 582 F. App'x 75, 81

17

(3d Cir. 2014) (holding that loss of prison job was not atypical and significant hardship) *accord, e.g.*, *Perry v. Lackawanna Cnty. Children & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009); *Jean-Pierre v. BOP*, 301 F. App'x 124, 126 (3d Cir. 2008).

Lee-Chima's claim also fails to the extent he alleges that procedural due process protections were triggered because the disciplinary sanction resulted in him being denied parole. Inmates confined in Pennsylvania do not have "a constitutionally protected liberty interest in being paroled before [their] actual release." *Fantone v. Latini*, 780 F.3d 184, 186 (3d Cir. 2015).[2] The court will accordingly dismiss the due process claim against Schneck.[3]

### 3. Claims Against Defendants Who Responded to Grievances, Letters, and Appeals

The majority of defendants named in Lee-Chima's amended complaint—defendants Booher, Klinefelter, Rossman, Grice, Sarra,

---

[2] The amended complaint additionally alleges that Lee-Chima "lost good time," as a result of the disciplinary sanction. (Doc. 24 ¶ 64). It is unclear from this conclusory and unsupported assertion whether Lee-Chima was sanctioned with a loss of good conduct time. This assertion is therefore insufficient to allege that Lee-Chima suffered an atypical and significant hardship in relation to the ordinary incidents of prison life.

[3] Because the court finds that dismissal of the claim against Schneck is warranted for other reasons, the court does not address defendants' argument that Lee-Chima failed to exhaust administrative remedies with respect to this claim.

Williamson, Marsh, Houser, Moslak, Burd, Moore, Varner, Barner, Verbyla, and Barnacle—did not play any personal role in the alleged violations of Lee-Chima's civil rights other than responding to Lee-Chima's grievances, letters, and associated appeals arising from his underlying claims against defendants Carolan, Carmac, John Doe 1, and Schneck.

Lee-Chima's claims against the defendants who responded to grievances, letters, and associated appeals fail as a matter of law. First, to the extent they arise from Lee-Chima's claims against defendant Schneck, the claims fail because, as noted above, Lee-Chima fails to state a claim against Schneck upon which relief may be granted. The other defendants cannot be faulted for failing to intervene in an alleged constitutional violation when the underlying conduct did not itself violate the constitution.

Second, to the extent the claims arise from Lee-Chima's claims against defendants Carolan, Carmac, and John Doe 1, the claims fail because a defendant's after-the-fact response to a grievance or letter complaining about a past harm is not sufficient to allege the defendant's personal involvement in the underlying harm. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

Finally, to the extent Lee-Chima intends to assert freestanding claims of violation of his right to due process based on defendants' responses to his

grievances and appeals, the claims fail because prisoners do not have a constitutional right to a prison grievance process. *See, e.g.*, *Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020); *Rieco v. Moran*, 633 F. App'x 76, 79 (3d Cir. 2015); *Davis v. Samuels*, 608 F. App'x 46, 49 (3d Cir. 2015). The court will accordingly dismiss the claims against defendants Booher, Klinefelter, Rossman, Grice, Sarra, Williamson, Marsh, Houser, Moslak, Burd, Moore, Varner, Barner, Verbyla, and Barnacle for failure to state a claim upon which relief may be granted.

### 4.   Claims Against State Police Defendants

Lee-Chima's claims against the State Police defendants, defendants John Doe 2 and Bonin, appear to be based on the theory that they violated Lee-Chima's right to due process by refusing to initiate criminal charges against Carolan. (*See* Doc. 24 ¶¶ 130-43). These claims are meritless. A private citizen does not have a constitutional right to have law enforcement officials press criminal charges against another private citizen. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Hookey v. Lamas*, 438 F. App'x 110, 112 (3d Cir. 2011). The court will accordingly dismiss the claims against John Doe 2 and Bonin with prejudice.

### 5.    Personal Involvement of Supervisory Defendants and Quist

A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. *Id.*

In this case, Lee-Chima has sued defendants Wetzel and Little, but it appears that the claims against them are based solely on their roles as former secretaries of the DOC. (*See* Doc. 24 ¶¶ 146-53). There are simply no allegations in the amended complaint that Wetzel and Little personally directed any of the alleged civil rights violations by the other defendants or had actual knowledge that such violations were occurring. Similarly, Lee-Chima seeks to hold defendants Marsh and Houser liable based on the fact that they were superintendents of SCI-Benner Township during the relevant period, but this is not by itself sufficient to establish personal liability. *Rode*, 845 F.2d at 1207. The court will accordingly dismiss these claims for failure to allege personal involvement.

21

The court will also dismiss all claims against defendant Quist for failure to allege personal involvement. Quist is named as a defendant in the amended complaint, *see* Doc. 24 at 11, but the body of the complaint is devoid of any allegations as to how Quist participated in the alleged civil rights violations. *See id.* at 15-35. Indeed, the body of the complaint does not appear to even mention Quist. *See id.*

**6.    Conditions of Confinement, Equal Protection, and Medical Care Claims**

The court will additionally dismiss Lee-Chima's conditions of confinement, equal protection, and denial of medical care claims against all defendants for failure to state a claim upon which relief may be granted. These claims are asserted in conclusory fashion at the beginning of the amended complaint, (*see* Doc. 24 at 4), but it is not clear from the body of the complaint what factual allegations, if any, support the claims. Although Lee-Chima attempts to assert additional factual allegations in support of these claims in his briefs opposing the motion to dismiss, (*see* Docs. 40, 48), a complaint "may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). The court will accordingly dismiss the conditions of confinement, equal protection, and denial of medical care claims for failure to state a claim upon which relief may be granted.

### 7.   Official Capacity Claims

Finally, the court will address Lee-Chima's official capacity claims because all defendants named in the amended complaint are sued in both their individual and official capacities. (*See* Doc. 24 at 7-13). Defendants are correct that the official capacity claims are properly dismissed. DOC employees sued in their official capacities are entitled to sovereign immunity under the Eleventh Amendment from claims for damages brought pursuant to Section 1983. *Downey v. Pa. Dep't of Corrs.*, 968 F.3d 299, 310-11 (3d Cir. 2020).[4]

### B.   Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips*, 515 F.3d at 245. The court will grant Lee-Chima leave to amend his dismissed claims against defendant Schneck because it appears that leave to amend those claims would be neither inequitable nor futile. The court will also grant Lee-Chima leave to amend his equal protection, conditions of

---

[4] Although the amended complaint also seeks injunctive relief, (Doc. 24 at 4), such relief is improper because the amended complaint only alleges past harms of Lee-Chima's civil rights and injunctive relief is forward looking and may only be awarded to prevent future harms. *See Yaw v. Del. Riv. Basin Comm'n*, 49 F.4th 302, 317-18 (3d Cir. 2022).

confinement, and medical care claims. All other dismissed defendants will be dismissed without further leave to amend. It appears that amendment of the claims against these defendants would be futile because there does not appear to be any basis by which Lee-Chima could plausibly allege their personal involvement in the alleged civil rights violations.

## IV.   CONCLUSION

For the foregoing reasons, the court will grant defendants' motion to dismiss in part and deny it in part, allow Lee-Chima's claims against defendants Carolan, Carmac, and John Doe 1 in their individual capacities to proceed, dismiss his claims against defendant Schneck without prejudice, dismiss his claims against all other defendants without further leave to amend, and grant Lee-Chima leave to file a second amended complaint. An appropriate order shall issue.


*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

**Dated: August 12, 2024**
22-1801-01

24