**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KASHEYON LEE-CHIMA,** | : | |
| **Plaintiff** | : | **CIV. ACTION NO. 3:22-CV-1801** |
| **v.** | : | **(JUDGE MANNION)** |
| **E.C. CAROLAN, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court in this prisoner civil rights case is a motion for summary judgment filed by the two remaining named defendants. For the reasons that follow, the motion will be granted and this case will be closed.

## I. Procedural History

Plaintiff, Kasheyon Lee-Chima, filed this case on November 5, 2022, and the court received and docketed his original complaint on November 10, 2022. (Doc. 1). Lee-Chima's original complaint asserted numerous civil rights violations against 23 defendants arising out of an incident in which defendant E.C. Carolan, a correctional officer at SCI-Benner Township, allegedly assaulted Lee-Chima. (*Id.*)

After defendants moved to dismiss the original complaint, Lee-Chima filed an amended complaint. (Docs. 17, 22). Defendants then moved to dismiss the amended complaint, and the court granted the motion in part and

denied it in part, allowing the case to proceed as to the claims against defendants Carolan, Carmac, and John Doe 1, dismissing the equal protection, conditions of confinement, and medical care claims and all claims against defendant Schneck without prejudice, dismissing all other claims with prejudice, and granting Lee-Chima leave to file a second amended complaint. (Docs. 51-52).

After Lee-Chima failed to file a second amended complaint by the court-imposed deadline, the court dismissed all claims and defendants in the case with prejudice except for Lee-Chima's claims against defendants Carolan, Carmac, and John Doe 1. (Doc. 56). With respect to those defendants, Lee-Chima asserted excessive force and retaliation claims against Carolan, and a failure to intervene claim against defendants Carmac and John Doe 1. Carolan and Carmac answered the amended complaint on January 9, 2025. (Doc. 57).

Following the close of fact discovery, defendants Carolan and Carmac filed the instant motion for summary judgment on November 25, 2025. (Doc. 69). After the court granted multiple extensions of time, defendants filed their supporting brief and statement of material facts in connection with the motion on February 23, 2026. (Docs. 76-77). The court then granted multiple extensions of time for Lee-Chima to respond to the motion, and he timely did

so on August 3, 2026. (Docs. 93-95). Defendants have not filed a reply brief, and the deadline for doing so has expired under the Local Rules. The motion for summary judgment is accordingly ripe for review. Defendant John Doe 1 has not been identified or served with process and accordingly has not joined in the motion for summary judgment or otherwise responded to Lee-Chima's allegations against him.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 254 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating*

*Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). The court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts

immaterial." *Celotex*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007). Additionally, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. MATERIAL FACTS[1]

### A. Facts Relating to Liability

On 9:25 a.m. on February 20, 2021, Lee-Chima was in a common area of SCI-Benner Township when he said something that defendant Carolan

[1] Local Rule 56.1 requires a motion for summary judgment to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried" and requires that the party opposing a motion for summary judgment file a statement responding to the numbered paragraphs in the movant's statement of material facts, which "shall include references to the parts of the record" that support the nonmovant's opposition to the motion. M.D. Pa. L.R. 56.1. In this case, both parties filed statements of material facts as required by Rule 56.1. (Docs. 76, 94). The court's statement of facts is derived from those statements and the evidence cited by the parties. The court also cites directly to the video evidence that has been attached to defendants' motion with respect to any facts that are clearly established by the video.

heard. (Doc. 76 ¶1; Doc. 95 ¶1).[2] Lee-Chima and Carolan then began talking to one another. (*See* Ex. D1[3] at 0:00:03).[4]

The parties sharply dispute what Lee-Chima and Carolan said during the relevant conversation. According to defendants, Lee-Chima stated, "this is fucking bullshit our recreation time changes every fucking day this CO is too stupid to figure it out." (Doc. 76 ¶2). Lee-Chima denies making such a statement. (Doc. 95 ¶2). Defendants represent that Carolan then told Lee-Chima to go back to his cell, but Lee-Chima says that no such direction was given. (Doc. 76 ¶3; Doc. 95 ¶3.) According to defendants, Lee-Chima refused to return to his cell and told Carolan, "I'm not locking in because you don't like what I said." (Doc. 76 ¶¶4-5). Lee-Chima denies that he was ordered to return to his cell or that he refused to do so. (Doc. 95 ¶¶4-5). Defendants state that Carolan then ordered Lee-Chima to return to his cell a

---

[2] The parties dispute whether Lee-Chima was speaking directly to Carolan or whether he was speaking to other inmates in Carolan's presence, and it is unclear from the video evidence attached to defendants' motion which is the case, but it is undisputed that Lee-Chima was talking and that Carolan heard what he said. (Doc. 76 ¶1; Doc. 95 ¶1).

[3] Exhibit D1 is video footage from Camera 416 that has been attached to defendants' motion for summary judgment. A copy of the video was mailed to the court and has been retained in the court's record of the case.

[4] Although the parties dispute what was said during the conversation, the video evidence clearly shows them talking to each other.

second time, but Lee-Chima denies that Carolan made such an order. (Doc. 76 ¶6; Doc. 95 ¶6).

The conversation continued as Lee-Chima began to walk away from defendant Carolan. (Ex. D2[5] at 00:00:15-25). Lee-Chima began walking towards his cell during this conversation. (Doc. 76 ¶7; Doc. 95 ¶7; Ex. D2 at 00:00:25-28). According to defendants, Lee-Chima then said to Carolan, "man I'll fuck you up pussy." (Doc. 76 ¶8). Lee-Chima denies making such a statement. (Doc. 95 ¶8).

The video evidence shows that as Lee-Chima walked past the stairs holding a cup of coffee, Carolan placed his left hand on Lee-Chima's left arm, and Lee-Chima then turned around to face Carolan. (Ex. D2 at 00:00:30-33).[6] Carolan then attempted to grab Lee-Chima with his left arm. (*Id.* at 00:00:33-34). Carolan attempted to handcuff Lee-Chima, and as he did so,

---

[5] Exhibit D2 is video footage from Camera 418 that has been attached to defendants' motion for summary judgment. A copy of the video was mailed to the court and has been retained in the court's record of the case.

[6] Lee-Chima denies that he turned around to face Carolan and characterizes Carolan's initial physical contact as a "sneak attack . . . by shoving forc[e]fully at plaintiff's back causing him to stumble forward." (Doc. 95 ¶9). The video evidence, however, clearly refutes this characterization of the contact and instead shows Carolan simply placing his hand on Lee-Chima's arm and Lee-Chima then turning around.

Lee-Chima placed his coffee cup on the stairs. (*Id.* at 00:00:34-47).[7] After approximately thirteen seconds of Lee-Chima struggling against the handcuffs, during which Carolan lightly pushed Lee-Chima into a nearby wall, Carolan succeeded in handcuffing him. (*Id.*) Carolan then led Lee-Chima away while holding him by his handcuffed hands. (*Id.* 00:00:47-00:01:03). Carolan then put Lee-Chima in the counselor's office. (Doc. 76 ¶19; Doc. 95 ¶19).

### B. Facts Relating to Exhaustion

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804. (*See* DC-ADM 804, Doc. 76-7). Under DC-ADM 804, a prisoner must first submit a grievance within fifteen working days from the date of the incident. *Id.* §1(A)(8). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make." *Id.* §1(A)(11). If the inmate is unable to comply with the fifteen-day deadline, he may request an extension of time to file a grievance. *Id.*

---

[7] Lee-Chima states that the video shows that "Carolan's physical contact . . . cause[d] the grip of the cup with the hot contents to fall to the ground and roll underneath the stairs," (Doc. 95 ¶11), but the video plainly shows Lee-Chima placing the cup on the stairs.

§1(C)(2). Next, the prisoner must submit a written appeal to an intermediate review level within fifteen working days. *Id.* §2(A)(1)(a). Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days. *Id.* §2(B)(1)(b).

If a prisoner's initial DC-ADM 804 grievance is determined to allege abuse of an inmate, it is investigated pursuant to DC-ADM 001. *Id.* §1(D)(3). Upon making this determination, the facility grievance coordinator must submit an extension giving notice of the investigation pursuant to DC-ADM 001 to the inmate. *Id.* §1(d)(4). The initial review response granting or denying the inmate's grievance is not issued until the investigation is complete. *Id.* §1(D)(5).

Lee-Chima filed a grievance about the events at issue in this lawsuit pursuant to DC-ADM 804 on March 10, 2021.[8] (Doc. 76-6 at 8). In the grievance, Grievance No. 917984, Lee-Chima alleged that defendant

---

[8] Although defendants have included facts in their statement of material facts and exhibits pertaining to Lee-Chima's disciplinary charges and resulting appeals, the court will disregard this evidence because defendants only seek summary judgment for failure to exhaust administrative remedies for the claims against defendant Carmac and the retaliation claim against defendant Carolan, and Lee-Chima concedes that he did not exhaust these claims through the appeals of his disciplinary process. (*See* Doc. 93-4 at 24; Doc. 95-1 ¶¶34-35). Thus, the court's summary of the relevant facts only addresses facts pertaining to Lee-Chima's DC-ADM 804 grievance in the interest of judicial economy.

Carolan used excessive force against him "for simply asking this officer a question concerning the schedule for my cohort's block out/recreation time." (*Id.*) He also stated that Carolan "revoke[d] and prohibit[ed]" him from recreation time. (*Id.*) Although the complaint did not identify defendant Carmac by name, it stated that a "unit sgt. who[se] name is unknown to me was made aware of the situation." (*Id.*)

The grievance was referred for investigation as an allegation of abuse pursuant to DC-ADM 001. (*Id.* at 7). After the investigation was completed, correctional officer S. Barner denied the grievance through an initial review response on May 20, 2021. (*Id.* at 6). Lee-Chima appealed to the facility manager on June 1, 2021, but the response did not advance any arguments or assert any facts regarding Lee-Chima's claims against Carmac or Lee-Chima's retaliation claim against Carolan. (*Id.* at 4). Rather, the appeal only pertained to the allegation of excessive force by Carolan. (*Id.*) The prison's superintendent upheld the denial of the grievance on June 25, 2021. (*Id.* at 3). Lee-Chima then appealed to SOIGA, but his appeal again focused only on the claim of excessive force by Carolan and did not raise any arguments on appeal pertaining to the claims against Carmac or the retaliation claim against Carolan. (Doc. 93-6 at 12). SOIGA upheld the denial of the grievance on September 2, 2021. (*Id.* at 13).

## IV. Discussion

As a preliminary matter, the court will *sua sponte* dismiss Lee-Chima's claims against the remaining John Doe defendant because he did not identify the defendant prior to the discovery deadline. Claims against John Doe defendants are properly dismissed when the defendants have not been identified prior to the discovery deadline. *See, e.g., Blakeslee v. Clinton County*, 336 F. App'x 248, 250 (3d Cir. 2009); *Ornstein v. Warden*, 3:18-CV-2042, 2021 WL 4290180, at *3 n.35 (M.D. Pa. Sept. 21, 2021); *King v. Mansfield Univ. of Pa.*, No. 1:11-CV-1112, 2014 WL 4546524, at *10 (M.D. Pa. Sept. 12, 2014).

Turning to the named defendants' summary judgment arguments, Defendants seek summary judgment because Lee-Chima failed to exhaust administrative remedies on the claims against Carmac and the retaliation claim against Carolan and because his claims fail on their merits. The court begins with the exhaustion argument.

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. §1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the

procedural rules of the prison in which they are incarcerated. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available." *Rinaldi v. United States*, 904 F.3d 257, 268 (2018) (citing *Woodford*, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 266-67 (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). If defendants establish failure to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative remedy process was unavailable. *Id.* at 268.

In this case, it is clear from the record that Lee-Chima failed to exhaust administrative remedies with respect to all claims against defendant Carmac

and the retaliation claim against Carolan. Although Lee-Chima arguably raised these claims in his initial grievance by stating that Carolan took actions against him "for simply asking [Carolan] a question concerning the schedule for my cohort's block out/recreation time" and by identifying Carmac by his role in the prison, (*see* Doc. 76-6 at 8), he plainly abandoned those claims by failing to mention them in his administrative appeals to the facility manager and SOIGA. (*see id.* at 4; Doc. 93-6 at 12). Lee-Chima's abandonment of those claims during his administrative appeals constituted a procedural default of the claims; the fact that he exhausted the excessive force claim against Carolan does not operate to exhaust the other claims in the case. *See Jones*, 549 U.S. at 219-24 (holding that exhaustion is analyzed on a claim-by-claim basis and that unexhausted claims should be dismissed while exhausted claims are allowed to proceed); *Woodford*, 548 U.S. at 90 (holding that administrative remedies must be exhausted in accordance with the procedural rules of the prison).

The burden accordingly shifts to Lee-Chima to show that administrative remedies were unavailable to him. *Rinaldi*, 904 F.3d at 268. Lee-Chima plainly fails to meet this burden because he has not advanced any arguments that the grievance process was unavailable to him, and even if he did, the fact that he exhausted the excessive force claim against Carolan plainly

shows that the process was available to him. Accordingly, the court will grant summary judgment on the retaliation claim against Carolan and on all claims against Carmac for failure to exhaust administrative remedies.

The court's analysis therefore proceeds to the merits of Lee-Chima's claims solely with respect to his excessive force claim against defendant Carolan. To succeed on an excessive force claim, a plaintiff must prove that a defendant used force "maliciously and sadistically for the very purpose of causing harm." *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193 (3d Cir. 2021) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Several factors should be considered in determining whether force was applied maliciously and sadistically, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response.

*Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)).

In this case, the video evidence plainly contradicts Lee-Chima's claim of excessive force. Contrary to Lee-Chima's characterizations of the force used as a "sneak attack," an "assault and battery," an action that made Lee-Chima "fear for his life," a "manhandling," a "physical attack," a "beating," and

"physical abuse," (Doc. 93-2 at 3; Doc. 93-4 at 8-9, 34, 39), the video evidence clearly shows defendant Carolan simply placing a hand on Lee-Chima's arm and then handcuffing him in a routine manner. The court does not need to conduct a detailed analysis of the facts relevant to determining whether force was excessive because, simply put, no reasonable finder of fact could conclude that Carolan used excessive force after viewing the objective video evidence in this case. *See Scott*, 550 U.S. at 380 (holding that summary judgment is properly granted in favor of defendants when plaintiff's version of events is plainly contradicted by objective video evidence). Summary judgment is likewise warranted for defendants Carmac and John Doe. Because Carolan's use of force was plainly not excessive, the other defendants cannot be held liable for failing to intervene.

## V. CONCLUSION

For the foregoing reasons, the court will grant defendants' motion for summary judgment and close this case. An appropriate order shall issue.

**Malachy E. Mannion**
**United States District Judge**

**Dated:** 9/10/26
22-1801-02